FILED

MAY 1 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RONALD WASHINGTON, R 23524
777 W Riverside Dr
                Petitioner,
Ionia, MI 48846
-V-

WILLIAM H. REHNQUEST, JOHN PAUL STEVENS
SANDRA DAY O'CONNOR, ANTONIN SCALA,
ANTHONY M. KENNEDY, DAVID H. SOUTER,
CLARENCE THOMAS, RUTH BADER GINSBERG,
STEVEN G. BREYER, BOYCE F. MARTIN, JR.,
AND GERALD ROSEN.

              Respondents.

DISTRICT COURT NO:
CASE NUMBER: 105CV1030

JUDGE: UNASSIGNED

DECK TYPE: PRO SE GENERAL CIVIL

DATE: MAY 19,2005

Ronald Washington, #213524
Riverside Correctional Facility
777 W. Riverside Drive
Ionia, Michigan 48846

William H. Rehnquest, John Paul Stevens
Sandra Day O'Connor, Antonin Scala,
Anthony M. Kennedy, David H. Souter,
Clarence Thomas, Ruth Bader Ginsberg,
Steven G. Breyer,
1 First Street
Washington, D.C. 20543

Boyce F. Martin, Jr.,
601 W. Broadway
Louisville, Ky 40202

Gerald Rosen.
231 W. lafayette Boulevard
Detroit, Michigan 49226

COMPLAINT

42 U.S.C. §§ 1983, 1985

Respectfully requested,

Ronald Washington

Ronald Washington, #213524
Riverside Correctional Fac.
777 W. Riverside Dr.
Ionia, Michigan 48846

Dated: April 11, 2005

1

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

RONALD WASHINGTON,

      Petitioner,

-V-                                  DISTRICT COURT NO.

WILLIAM H. REHNQUEST, JOHN PAUL STEVENS,    JUDGE:
SANDRA DAY O'CONNOR, ANTONIN SCALIA,
ANTHONY M. KENNEDY, DAVID H. SOUTER,      MAGISTRATE JUDGE:
CLARENCE THOMAS, RUTH BADER GINSBERG,
STEVEN G. BREYER, BOYCE F. MARTIN, JR.,
AND, GERALD ROSEN.

      Respondents. In their
      individual capacity.

### COMPLAINT

### 42 U.S.C. §§ 1983, 1985

1). This is a 42 U.S.C. §§ 1983, 1985 complaint filed by Petitioner Ronald Washington (hereinafter personalized, using I, me, my, etc.), against Respondents for failing to decide the merits of my claims and inter alia, leaving a **INNOCENT BLACK MAN FALSELY IMPRISONED** in violation of the constitution, statutes and laws of the United States to punish me because I sued two **WHITE** lawyers.

2). I seek **"Declaratory Judgment and Injunctive Relief.**

### JURISDICTION AND VENUE

3). Jurisdiction is authorized by **28 USC §§ 1331, 1332, 1343(a), 2201(a)** and **Civil Rule 57.**

4). This Court has supplemental jurisdiction pursuant to **28 USC § 1367(a); 42 USC §§ 1988, 1997.**

5). Venue is authorized pursuant to **28 USC § 1391(e)(2)(3)**, as amended in 1990.

### JURY TRIAL DEMANDED

6). I demand trial by jury. **28 USC § 1861.** The provisions of the Sixth and

-1-

Seventh Amendment to the Federal Constitution securing trial by jury apply to judicial
proceedings in the incorporated territories of the United States.

7). The jury thus referred to is the jury constituted as it was at common law, of
twelve (12) persons of my choice neither more nor less. Federal Rules Civil Procedure,
Rule 38; Rochin v People of California, 342 US 165, 169-170, 72 S Ct 205, 208, 96 L Ed
183 (1952).

### CONCISE STATEMENT OF THE CASE

8). I was falsely convicted in Michigan's Detroit Recorders Court (now Wayne
County Circuit Court) for the crime of Robbery Armed, contrary to **MICHIGAN COMPILED
LAWS ANNOTATED (MCLA) 750.529; MICHIGAN STATUTE ANNOTATED (MSA) 28.797**; Assault With
Intent Great Bodily Harm Less than Murder, contrary to **MCLA 750.84; MSA 28.297**; and
Habitual Offender-Second, contrary to **MCLA 769.10; MSA 28.1082**. Direct appeal denied.

9). On collateral review I filed malpractice complaints. One (1) against trial
counsel, and one (1) against appellate counsel, contending: **(A)** There were no probable
cause for the arrest; **(B)** The state lacked jurisdiction to hale me before the court on
the charges where the criminal complaint and criminal warrant were changed from its
original use, forged, and illegal court documents; **(C)** Insufficient evidence to
sustain a conviction; **(D)** False habitual conviction; **(E)** Gross-negligent
representation by trial counsel; **(F)** Gross-negligent representation by appellate
counsel. Judge Edward Thomas and Judge Kathleen Macdonald agreed and ordered
settlement of redress. However, I was informed by a court officer that I should have
waited until after I was released from prison before I filed the complaints, but since
they were already filed, I should lower the amount in damages I am asking to an amount
the attorneys could pay **out of the pocket,** because the attorneys are the judges
colleagues and personal friends, or the judges would dismiss the complaints and make
it hard if not impossible for me to regain my freedom.

10). Because I refused, without my knowledge or consent, Judge Thomas held

another hearing and appointed my sister, a laymen to defend my complaint. When she could not defend having no knowledge of the facts or law, the court allowed trial counsel unopposed oral argument and issued a second order that dismissed the complaint. I appealed. Judge Thomas continued issuing the same order that dismissed the case. The COA dismissed the appeal claiming I filed the appeal before the final order.

11). Because I refused, Judge Macdonald held another hearing without notifying me and allowed appellate counsel unopposed oral argument and issued a second order that dismissed the complaint out of mediation by the Mediation Tribunal. I appealed. The State Court of Appeals held two files in one docket and denied relief. The State Supreme Court denied relief.

12). I filed for habeas relief in the federal district court. Michigan's Office Of Attorney General (OAG) actively admitted I am falsely imprisoned on all six (6) counts. However, because I sued two white lawyers and refused to lower the amount in damages, Respondent Rosen refused to decide the merits of my claims and refused to order habeas relief and dismissed my habeas corpus petition with prejudice. Respondent Martin held a one judge court and denied my request for certificate of appeablity and appeal of right in the Sixth Circuit Court of Appeals. The remaining Respondents denied all relief in the U.S. Supreme Court.

## PARTIES

13). I, Ronald Washington, am presently incarcerated at the Riverside Correctional Facility, at 777 W. Riverside Dr., Ionia, Michigan 48846.

14). Respondents, William H. Rehnquest, John Paul Stevens, Sandra Day O'Connor, Antonia Scalia, Anthony M. Kennedy, David H. Souter, Clarence Thomas, Ruth Bader Ginsberg, and Stephen G. Breyer, are all Justices at the Supreme Court of the United States, at 1 First Street, Washington D.C., 20543.

15). Boyce F. Martin, Jr., is Chief Judge in the United States Court of Appeals

-3-

for the Sixth Circuit, at 209 Gene Snyder U.S. Courthouse, 601 W. Broadway, Louisville, Ky 40202.

16). Gerald Rosen, is a U.S. District Judge at Michigan's U.S. District Court at 231 W. Lafayette Boulevard, Detroit, Michigan 48226.

### STATEMENT OF THE CASE WITH MEMORANDUM OF LAW

17). August 31, 1990, Investigator, Margaret Sample, of Michigan's Detroit Police Department's 13th precinct, swore under oath in a search warrant and affidavit that a **ROBERT WASHINGTON**, assaulted and robbed Raynell Mitchell on August 25, 1990. Appendix **"A."**

18). September 3, 1990, I, **RONALD WASHINGTON**, was arrested on a false probation violation. Bond was set at $5,000 cash. Appendix **"B"** There were <u>never</u> a court appearance on the claimed violation. That was a false charge to hold me while Sample build the assault and robbery case against me.

19). Sample prepared a investigative report claiming I was the assailant and robber of Mitchell.

20). However, her commanding officer refused to approve it because there were never an Oath or affirmation that I commit an offense against Mitchell. Appendix **"C."**

21). I was taken to Police Headquarters in Downtown Detroit. Sample and Magistrate, Irma J. Chenevert-Bragg prepared the criminal complaint and criminal warrant and tried to get the Wayne County Prosecutor's Office to endorse the complaint as required by **MCLA 764.1, 767.40,** and **MICHIGAN RULES OF COURT (MCR) 6.101(C).**

22). Donald S. Walker began preparing the warrant recommendation, but refused to complete it pursuant to MCLA 600.1427 because there were no warrant affidavit upon Oath or affirmation that I commit an offense. Appendix **"D."**

23). Wednesday, September 5, 1990, in the A.M. and again in the P.M., I was taken to the 36th district court for arraignment. Sample and Chenevert-Bragg tried to get the prosecutor or district court judge to endorse the complaint and request the

warrant. The prosecutor and judge refused endorsement.

24). Thursday, September 6, 1990, I was again taken to the district court for arraignment, and again the prosecutor and judge refused endorsement.

25). Friday, September 7, 1990, I was again taken to the district court for arraignment. Again, the prosecutor and judge again refused endorsement.

26). At that time the Wayne County Sheriffs informed me that they are supposed to release me because I was being held over 72 hours without arraignment. I request my immediate release and was denied. The sheriffs informed me the district court do arraignments on Saturdays until 12:00 P.M., and if I was not arraigned on Saturday, I would be released.

27). Saturday, September 8, 1990, I was taken to the district court. The prosecutor and judge again refused endorsement.

28). Immediately, Chenevert-Bragg, Sample, and Mitchell conspired. Mitchell signed her name on the complaint, Appendix "E," next to Bar no "P21912" belonging to Donald S. Walker," Appendix "F," to make it appear that the prosecutor endorsed the complaint. That is forgery. 18 USC 494, 505; MCLA § 750.248(1), MSA § 28.445, and criminal conspiracy. 18 USC 241. Forgery is in the writing itself, and one can forge a document using his/her own name. People v Thomas, 182 Michigan Appeals Reports (Mich App) 225, 425 NW2d 215 (1989); People v Susalla, 392 Michigan Reports (Mich) 387, 220 NW2d 405 (1974). Under Michigan law, the prosecuting attorney is the informant/complainant in all criminal prosecutions and MUST endorse the complaint. MCR 6.101(C); MCLA §§ 767.1, 1a, 767.40; Glancy v Parole Board of Michigan Department of Corrections, (E.D. Mich 1968) 293 F. Supp 74; Bloss v Williams, 15 Mich App 228, 233 (1968); Wright, Federal Practice And Procedure, Rule 3 §§ 41-42. Mitchell is a hotel clerk. Appendix "A."

29). Chenevert-Bragg, Sample and Mitchell again conspired. Chenevert-Bragg stamped her name of the warrant to make it appear she is the arresting officer.

Mitchell signed her name on the warrant next to Bar no. **P21912** to make a warrant return. Appendix **"G."** That too is forgery where neither Chenevert-Bragg nor Mitchell are "peace officers" or authorized to make an arrest, **MCR 6.101(E)**; **MCLA 764.1b, 767.31**; People v Bissonnette, 327 Mich 349, 356-357; 42 NW2d 113 (1950), or warrent return. Federal Practice And Procedure, Rule 4(4)

30). The complaint and warrant were never duly authenticated under the seal of the Court, contrary to **MCLA 600.2106, 600.2118a, 600.2129**; **MSA §§ 27A.2106, 27A.2118(1), 27A.2129.**

31). Chenevert-Bragg filed the forged complaint and warrant. See the docket journal. Appendix **"H."** That is a 4th & 14th Amendment violation. The 4th Amendment requires arrest warrants be "based upon probable cause, supported by Oath or affirmation" -- a requirement that may ... not be satisfied by the mere filing of criminal charges in an unsworn information signed by a [HOTEL CLERK] ... Accordingly, since most prosecutions in [Michigan] are commenced by information, [Michigan] Law requires, in compliance with the constitutional demand, that an arrest warrant be supported by either an affidavit or "sworn testimony establishing the grounds for issuing the warrant." Kalina v Fletcher, 522 US 118, 129, 118 S Ct 502, 139 L Ed 2d 471 (1997); U.S. v Bryant, 951 F Supp 674 (E.D. Mich 1977); People v Hill, 44 Mich App 308 (1973) and federal cases therein; Michigan Constitution 1963, Art I § II.

32). I was arraigned on charges of Attempt Murder, **MCLA 750.83**; **MSA 28.287**, and Robbery Armed, **MCLA 750.529**; **MSA 28.297**, case no. **90-65775.** Bond was set at $25,000, 10%.

33). After the arraignment, the sheriffs who escort me to and from court immediately informed me and my attorney, John Brusstar, the signatures on the complaint and warrant were forged. I requested my immediate release. Brusstar made the remark: "well, if I make them release him, they'll only re-arrest him outside the door."

34). At preliminary examination Sample and Magistrate, Thomas J. Shannon conspired in a fraudulent information that was never filed with the court to Judge Patrick Donahue requesting a high bond, Appendix "I." Judge Donahue honored that request and raised bond to $25,000 cash. Appendix "J."

35). I was bond over for trial at Detroit Recorders Court, **People v Washington,** case no. **90-9459**. The case was assigned to Judge Dolton A. Roberson pursuant to **MCR 8.111(B).**

36). September 28, 1990, during waiver of jury trial (WJT) prosecutor Marc Hart began telling the court he wanted to charge me as a habitual offender. Judge Roberson explained that I did not have a record that would allow, and, in his court, Mr. Hart would have to play by the rules. Because of that specific statement I requested a bench trial before Roberson (When the record was transcribed, that statement was removed). Judge Roberson stated HE would determine my guilt or innocence.

37). The day of trial, 30 minutes before trial was scheduled to began, the case was re-assigned to Judge Drain without my knowledge or consent, and without a valid order pursuant to **MCR 8.111(C).**

38). I was denied my 5th, 6th and 14th Amendment right to a fair trial where I was denied the right to confront the witness and evidence against me, Crawford v Washington, 124 S Ct 1354, 158 L Ed 2d 177 (2004). Mr. Hart had a list of witnesses to call at trial, Appendix "K," and never endorse or file the list with the court pursuant to **MCLA 767.40a; MSA 28.980,** to facilitate discovery and challenge. Appendix "H."

39). Brusstar had absolutely no knowledge of any prosecution witness whatsoever until Mr. Hart began to call them. Although Mitchell and Fred Beatty Jr., were the only ones to appear. Ms. Ivory Parker, the witness who would have testified to my innocience, was not allowed to appear. Brusstar never object.

40). Mitchell was cohered to testified that she was repeatedly stabbed and the

police were called, when they arrived, the E.M.S. was called, and transported her to Detroit Receiving Hospital where she received treatment and stayed two days.

41). Fred Beatty Jr. testified there was blood all over the hotel room and that it was he who called police and E.M.S..

42). However, there were no police to testify to responding to a call; No E.M.S. professional(s) to testify to responding to a call, treating, or, transporting Mitchell to the hospital; No medical records to prove Mitchell was injured or received medical attention; and, No doctor(s) to testify to treating Mitchell.

43). Mr. Hart produced 7 color, poloroid photos showing Mitchell wrapped as if mummified, not showing any injury whatsoever. Mitchell testified that her daughter took the photos. However, her daughter never took the stand to take responsibility of the photos. People v Rodgers, 14 Mich App 207, 214; 165 NW2d 337; People v Falkner, 389 Mich 682; 209 NW2d 193 (1973).

44). During sentencing Mr. Hart procuced a 8th black & white 35mm photo showing the backside of a nude body having at least 40-50 stab wounds, not showing the face or any body part to determine whether the body was that of a male or female, and the body was not that of Mitchell. The photos were admitted for the sole purpose to excite passion and prejudice.

45). I was convicted of assault with intent great bodily harm L/murder, contrary to MCLA 750.84; MSA 28.797; robbery armed, contrary to MCLA 750.529; MSA 28.797.

46). Sgt. Joseph Marchetti, of the Detroit Police Department (DPD) latent prints, claimed my thumb print matched the print on a finger print card and I was further convicted of being a habitual offender-second under case no. 79-08662, contrary to MCLA 769.10 where the claimed conviction was over 10 years, and there are no record of the claimed conviction. Appendix "L."

47). I was sentenced to 20-40 year's imprisonment, well above the statutory term of 10-20 years had I commit the crime.

-8-

48). After I was imprisoned, three (3) court officers came to the prison on three (3) separate occasions and informed me to inform appellate counsel, Amy Neville, of the forged signatures and the false imprisonment.

49). I fully advised Neville as instructed. She refused to bring the issue to the attention of the appellate courts. Appendix "M," dated October 31, 1991; Appendix "N," dated November 26, 1991; and Appendix "O," dated December 10, 1991.

50). I was forced to file ineffective assistance of trial counsel in pro per because Neville refused to assist me. Appendix "P," dated June 1, 1992.

51). October 16, 1992, the in pro per remand was denied. People v Washington, Michigan Court of Appeals no. 136571. Appendix "Q.".

52). After being given two (2) extensions of time to file the appellate brief, Neville filed the brief late causing the loss of oral argument on my appeal of right. Appendix "R," dated January 2, 1992, and concealed the reason for the loss for over 18 months. Appendix "S," dated May 25, 1993; Appendix "T," dated July 19, 1993.

53). November 30, 1993, the conviction was affirmed in part, reversed in part. Appendix "U."

54). On remand the court again found me guilty of being a habitual offender. See paragraph 46 supra.

55). May 27, 1994, leave to appeal in the Michigan Supreme Court was denied. People v Washington, no. 98456. Appendix "V."

56). January 12, 1995, I received the record file of my conviction and sentence. However, to the date of this pleading, I have not receive any of the photographs admitted at trial of Mitchell's claimed injuries.

## COLLATERAL REVIEW: WASHINGTON V BRUSSTAR

57). April 19, 1995, I filed a malpractice complaint against trial counsel, in Michigan's Wayne County Circuit Court, Washington v Brusstar, no. 95-511106-NM, Judge Edward M. Thomas. I contended false imprisonment where: (A) There were no probable

-9-

cause for the arrest; (B) the State lacked jurisdiction to hale me before the court where the criminal complaint and criminal warrant were changed from their original use, forged, and illegal court documents; (C) insufficient evidence to sustain a conviction; (D) false habitual conviction, and (E) gross-negligent representation. Appendix "W."

58). Brusstar filed an answer to complaint with an affirmative defense of statute of limitations. An affirmative defense admits the claims are true but excuses the defendant's conduct even if the plaintiff is able to establish a prima facie case. Martin v Ohio, 480 US 228, 107 S Ct 1098, 94 L Ed 2d 276 (1987); Patterson v New York, 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977); Jones v Jones, 988 F Supp 1000, (E.D. La 1997); Rice v Rose & Atkinson, 176 F Supp 2d 285. I rebutt.

59). July 10, 1995, Judge Thomas issued a notice of status conference. Appendix "X."

60). July 25, 1995, Judge Thomas issued a revised notice of status conference because he needed more time to consider the pleadings, depositions, and affidavits on file. Appendix "Y."

61). August 15, 1995, Judge Thomas held the status conference and denied Brusstar's answer to complaint, affirmative defense, and issued a status conference scheduling order for settlement of redress. I was not present due to incarceration. However, my mother was present to observe the proceedings. See note at bottom of Order. Appendix "Z."

62). August 24, 1995, Judge Thomas scheduled the Settlement Conference for March 6, 1996. Appendix "1-A."

63). Also on August 24, 1995, Brusstar filed his answer to complaint and affirmative defense the second time, changing the pleading name to "Motion For Summary Disposition." I rebutt.

64). After that filing, I was informed by a court officer that I should have

waited until after I was released from prison before I filed the complaints, but since they were already filed, I should lower the amount in damages I am asking to an amount the attorneys could pay **out of the pocket,** because the attorneys are the judges colleagues and personal friends, or the judges would dismiss the complaints and make it hard if not impossible for me to regain my freedom. See **"Affidavit of Ronald Washington."** Appendix **"1-B."** I refused because I did not believe what was said, and because I request and was granted trials by jury.

65). September 29, 1995, Judge Thomas held the summary disposition hearing, and denied my motion for writ of habeas corpus ad testificandum and motion for appointment of counsel.

66). My sister, Brenda Crane, a laymen, was in court to observe the proceedings as my mother was at the first hearing (paragraph 61, supra). Without my knowledge or consent, Judge Thomas appointed Ms. Crane, a laymen, to defend my cause against professional counsel representing Brusstar. When she could not defend having no knowledge of the facts or law, Gideon v Wainright, 372 US 335, 343-345, 83 S Ct 792, 796-797, 91 L Ed 2d 799 (1963), Judge Thomas allowed Brusstar's counsel unopposed oral argument and dismissed the case in a **unsigned, undated, order.** Appendix **"1-C,"** contrary to **MCR 2.116(J)(2).**

67). October 12, 1995, I filed for rehearing.

68). December 18, 1995, I received a letter informing me the case was dismissed November 16, 1995. Appendix **"1-D."**

69). February 2, 1996, I filed an appeal in the Michigan Court of Appeals, Washington v Brusstar, no. 191305.

70). February 27, 1995, judge Thomas denied rehearing and entered another order dismissing the case. Appendix **"1-E."**

71). April 8, 1996, the COA dismissed the appeal and my request for transcripts of motion hearings. Appendix **"1-F."** Rehearing denied June 5, 1996. Appendix **"1-G."**

-11-

72). I timely filed leave to appeal and a motion for default in the Michigan Supreme Court. Washington v Brusstar, no. 106417.

73). January 31, 1997, leave denied. Appendix "1-H." I filed for reconsideration and relief from judgement. March 28, 1997, relief denied. Appendix "1-I."

74). I petitioned for certiorari review in the U.S. Supreme Court. Washington v Brusstar, no. 97-5107.

75). October 6, 1997, certiorari denied. 522 US 849, 118 S Ct 203. December 8, 1997, rehearing denied. 522 US 1022, 118 S Ct 203.

COLLATERAL REVIEW: WASHINGTON V NEVILLE

76). April 20, 1995, I filed a malpractice complaint against appellate counsel, Amy Neville, in the Wayne County Circuit Court, Washington v Neville, no. **95-511258-NM**, Judge Kathleen Macdonald. I contended false imprisonment where: (A) There were no probable cause for the arrest on the charge; (B) the State lacked jurisdiction to hale me before the court where the criminal complaint and criminal warrant were changed from their original use, forged, and illegal court documents; (C) insufficient evidence to sustain a conviction; (D) false habitual conviction, and (E) gross-negligent representation. Appendix "1-J."

77). Neville filed summary disposition raising a affirmative defense of qualified immunity. I rebutt. Judge Macdonald issued a notice of status conference. Appendix "1-K."

78). July 11, 1995, Judge Macdonald issued a order denying habeas corpus and adjourned status conference because she needed more time to consider the pleadings, depositions, and affidavits on file. Appendix "1-L."

79). August 18, 1995, after taking the pleadings, depositions and affidavits under advisement, Judge Macdonald denied Neville's summary disposition and issued a Status Conference Scheduling Order for settlement of redress. Appendix "1-M."

80). November 11, 1995, pursuant to **MCR 2.116(J)(1)(a)**, Judge Macdonald issued

-12-

Notice of Mediation Hearing for January 23, 1996, at the Mediation Tribunal. Appendix "1-N."

81). December 23, 1995, I filed my mediation summary. Appendix '1-O."

82). December 27, 1995, Neville filed her mediation summary. Appendix "1-P."

83). For the reason stated in paragraph 64 supra, Judge Macdonald held another hearing contrary to MCR 2.116(J)(2); Never notifying me of the hearing; Allowed Neville's counsel unopposed oral argument; and, January 16, 1996, dismissed the case from mediation. Appendix "1-Q."

84). I appealed to the Michigan Court of Appeals, Washigton v Neville, no. 192321.

85). I filed a motion to show cause for the second hearing, and, why I was not notified. The motion was denied. Appendix "1-R."

86). I filed a motion for preparation of transcripts and documents. Judge Macdonald denied the motion claiming there were no hearing held. Appendix "1-S." However, Appendix "1-T, nos. 25-37" clearly show there were motion hearings.

87). I filed a motion with the COA to compel preparation of transcripts and documents. April 24, 1996, Chief Judge Martin Doctoroff, who was not assigned to the panel, acting alone, denied the motion. Appendix "1-U."

88). Neville and myself filed motions for extension of time to file our appellate and appellee briefs. September 6, 1996, Doctoroff, acting alone, denied my request, Appendix "1-V," while at the same time granted Neville's request. Appendix "1-W."

89). I filed for reconsideration and motion for disqualification of Doctoroff because of bias and prejudice and positioning Neville for unopposed oral argument. Motion denied. Appendix "1-X."

90). July 9, 1996, I filed my appellate brief. Grounds for relief:

DEFENDANT NEVILLE WAS NEGLIGENT, EVEN GROSSLY NEGLIGENT, BREACHED HER DUTY TO PLAINTIFF WHEN SHE WILFULLY REFUSED TO PROTECT HIS RIGHTS GUARANTEED BY THE CONSTITUTION BY REFUSING TO BRING TO THE ATTENTION OF THE COURT THAT HER CLIENT WAS FALSELY IMPRISONED.

-13-

DEFENDANT NEVILLE WAS NEGLIGENT, EVEN GROSSLY NEGLIGENT, BREACHED HER DUTY WHEN SHE REFUSED TO FILE PLAINTIFF'S BRIEF TIMELY INTO THE COURT OF APPEALS, CAUSING THE LOSS OF ORAL ARGUMENT ON HIS APPEAL OF RIGHT.

DEFENDANT NEVILLE WAS NEGLIGENT, EVEN GROSSLY NEGLIGENT, WHEN SHE REFUSED TO HELP PLAINTIFF PERFECT HIS IN PRO PER REMAND WHEN IT WAS CLEARLY FORESEEABLE THAT THE COMPLAINT OF INEFFECTIVE ASSISTANCE OF COUNSEL AND THE FALSE HABITUAL CONVICTION WERE VALID CLAIMS.

DEFENDANT NEVILLE WAS NEGLIGENT, EVEN GROSSLY NEGLIGENT, BREACHED HER DUTY WHEN SHE WILFULLY COMMIT THE CRIME OF FRAUD TO COVER-UP NEGLIGENCE CREATED BY HER OWN DOINGS.

DEFENDANT NEVILLE WAS NEGLIGENT, EVEN GROSSLY NEGLIGENT, BREACHED HER DUTY WHEN SHE WILFULLY ALLOWED HER OVERAL PERFORMANCE TO FALL BELOW THE STANDARD GUARANTEED BY THE SIXTH AMENDMENT.

THE TRIAL COURT'S VALUATION OF THE SUMMARY DISPOSITION WAS A FINDING OF FACT, AND THE COURT WAS WITHOUT JURISDICTION TO REVERSE THAT FINDING ENTERING A SECOND ORDERR DISMISSING THE CASE.

91). August 26, 1996, I filed peremptory reversal and immediate consideration of the circuit court's order dismissing the case without jurisdiction.

92). August 28, 1996, Neville filed a rebuttal to immediate consideration.

93). September 10, Neville filed her appellee brief.

94). September 24, 1996, Neville filed a 46 page motion and brief rebutting peremptory reversal.

95). I filed a motion to strike that 46 page motion where Neville did not have the court's permission to exceed the "20" page limit, and I was prejudiced by the additional pages. People v Leonard, 224 Mich App 569, 578-579, 569 NW2d 663 (1997).

96). November 5, 1996, the motions were denied. Appendix "1-Y."

97). I filed leave to appeal in the Michigan Supreme Court, of the: (A) denial of transcripts of motion hearings; (B) denial of order to show cause for the second hearing; and, (C) denial of motion to strike Neville's 46 page motion and brief. Washington v Neville, no. 107170.

98). May 30, 1997, leave denied. Appendix "1-Z."

99). I filed leave to appeal in the Michigan Supreme Court, Washington v Neville,

no. 107362, of the COA's order denying disqualification of judge Doctoroff.

100). May 30, 1997, leave denied. Appendix "2-A."

101). I filed leave to appeal in the Michigan Supreme Court, Washington v Neville, no. 107872, of the denial of peremptory reversal.

102). May 30, 1997, leave denied. Appendix "2-B."

103). I petitioned the United States Supreme Court for certiorari review, Washington v Neville, no. 97-5814. Cetrtiorari denied without review. Reoprted at 522 US 923, 118 S Ct 317. I petitioned for rehearing. Rehearing denied without review. Reported at 522 US 1037, 118 S Ct 648.

104). August 12, 1997, the Michigan Court of Appeals informed me: "YOU ARE NOT ENDORSED for oral arguments," the appeal will be heard on the briefs September 10, 1997, and all motions relating to the calendar must be filed by August 26, 1997. File no. 171, Appendix "2-C."

105). Also on August 12, 1997, the COA informed Neville from a separate file: YOU ARE ENDORSED for oral arguments." File no. 304, Appendix "2-D." The COA held two files in one docket giving different instructions to each party. A case of "DON'T LET THE RIGHT HAND KNOW WHAT THE LEFT HAND IS DOING."

106). Pursuant to the instructions given me, I filed a motion for relief from judgment, and, a motion to strike Neville's pleadings.

107). September 5, 1997, five days before the hearing, both motions were denied without cause and without review on the merits. Appendix "2-E."

108). November 21, 1997, the appeal was denied. Appendix "2-F." The COA claimed I claimed false arrest. I appealed because my claim is false imprisonment. April 6, 1998, rehearing denied, Appendix "2-G."

109). I filed leave to appeal in the Michigan Supreme Court, Washington v Neville, no. 112022. I also filed: (A) Motion For Directed Verdict whether the State had jurisdiction over my person; (B) Motion for Directed Verdict whether Judge

Macdonald had subject-matter jurisdiction to enter a second order (paragraph 82, supra); (C) Motion to Strike Neville's pleadings (paragraph 94 supra); and, (D) Motion For Summary Disposition.

110). December 30, 1998, leave denied. Appendix **"2-H."** It should be noted, however, the State Supreme Court is not convened between Christmas day, December 25, and New Years day, January 1.

## UNITED STATES DISTRICT COURT

111). I filed a writ of habeas corpus, and motion for appointment of counsel, in the U.S. District Court for the Eastern District of Michigan, Southern Division, **Washington v Elo**, no. **99-71187-DT**, Judge Rosen. I raised twenty three (23) claims to relief.

112). May 13, 1999, the motion for appointment of counsel was denied.

113). The State Office of Attorney General filed summary judgment, actively admitting my claims appear true as alleged, but claimed inter alia, I am not entitled to relief because I did not raise three (3) additional claims that were exhausted in State court on direct appeal; time barred and failure to exhaust. Appendix **"2-I."**

114). I filed summary judgment because precedent do not require a habeas petitioner to raise every claim that was exhausted on direct appeal. Precedent require, however, that every claim raised be squarely presented and exhausted in state Court. Picard v Connor, 404 US 270, 92 S Ct 509, 30 L Ed 2d 438 (1971); Anderson v Harless, 459 US 4, 103 S Ct 276, 74 L Ed 2d 3 (1982); Coleman v Thompson, 501 US 722, 111 S Ct 2546, 115 L Ed 2d 640 (1991); the petition is not time barred and I did not procedurally default. See paragrapy 117 infra.

115). The Attorney General filed records, briefs, and transcripts of motion hearings, e.t.c. Appendix **"2-J."**

116). I filed a motion to strike that material where I was never served with copies to facilitate meaningful challenge. Brady v State of Maryland, 373 US 83, 83 S

-16-

Ct 1194, 101 L Ed 2d 215 (1963). That is also a denial of the right to confront the witness. Crawford, supra. The motion to strike was never considered by the court.

117). February 29, 2000, in a memorandum opinion and order, Appendix "2-K," after having considered that material, changing and re-numbering my application, Judge Rosen denied habeas relief with prejudice claiming:

(A) Procedural default because the APPLICATION I presented and exhausted my claims in State courts were "ATTORNEY MALPRACTICE COMPLAINTS" rather than a MCR 6.500 motion for relief from judgment or MCR 3.303 State application for writ of habeas corpus, contrary to Trest v Cain, 522 US 87, 118 S Ct 478, 139 L Ed 2d 444 (1997); Hicks v Straub, 377 F3d 538 (CA 6 2004), where Respondent Rosen can not invoke a procedural default when the State never invoke a procedural default in any of its orders. And, there are no words in the provision of the Anti-Terrorism and Effective Death Penalty Act (AEDPA) and no case law that preclude/exclude applications of Attorney Malpractice with respect to the pertinent judgment or claims from the inclusion of "OTHER COLLATERAL REVIEW." 28 USC § 2254(b, c); Artuz v Bennett, 531 US 4, 121 S Ct 361, 148 L Ed 2d 213 (2000); Duncan v Walker, 533 US 167, 121 S Ct 2120, 150 L Ed 2d 251 (2001);

(B) Judge Rosen further claimed the application is "time barred" by the 1-year limitation period. There are no words in the provision of the AEDPA and no case law that preclude/exclude applications of Attorney Malpractice with respect to the pertinent judgment or claims from the inclusion of "OTHER COLLATERAL REVIEW" to toll the 1-year limitation period. 28 USC § 2244(d)(1)-(2). I filed the complaints of malpractice in the State trial courts April 19, 1995, and April 20, 1995, 1-year before the AEDPA's effective date of April 1996. The State Supreme Court denied leave to appeal December 30, 1998. I filed the habeas application in the Federal District Court March 7, 1999, ninety seven (97) days later. See Duncan, supra; O'Sullivan v Boerckel, 526 US 838, 119 S Ct 1728, 144 L Ed 2d 1 (1999);

-17-

(C) Judge Rosen further claimed in a footnote that: "it is ridiculous that I am trying to make a mountain out of a molehill or less because Mitchell's name appear on the complaint and warrant next to Walker's no. P21912. However, see paragraphs 17-33, supra; and,

(D) Judge Rosen dismissed the writ with prejudice, claiming I abused the writ. Under 28 USC § 2244(b)(1),(2), and **Rule 9(b) of the Rules Governing § 2254 Cases**, the cause and prejudice standard for cases of State court procedural default applies to an abuse of writ inquire. To abuse the writ, there MUST be a SECOND or SUBSEQUENT FEDERAL APPLICATION for habeas relief. McClesky v Zant, 499 US 467, 111 S Ct 1454 (1991). This was my FIRST AND ONLY habeas application.

## U.S. SIXTH CIRCUIT COURT OF APPEALS

118). I filed an appeal, **Washington v Elo**, no. **00-1319**.

119). I filed a motion to compel Judge Rosen to issue the certificate of appealability or statement stating why such certificate should not issue (this was prior to the order denying the certificate), and whether I should be able to proceed on appeal in forma pauperis.

120). July 6, 2000, the 6th Circuit issued a remand order for Judge Rosen to issue the certificate or ruling stating why the certificate should not issue. Appendix **"2-L."**

121). October 6, 2000, Judge Rosen issued a ORDER denying the certificate of appealability. Appendix **"2-M."**

122). October 26, 2000, the 6th Circuit remanded the case to Judge Rosen the second time. This time for Rosen to determine whether the appeal should go forward in forma pauperis.

123). November 3, 2000, I filed a second motion for issuance of certificate of appealability and request for immediate consideration.

124). December 5, 2000, in forma pauperis granted.

125). January 24, 2001, 6th Circuit Chief Judge, Martin, held a "one-judge-court," deferred from a de novo review of the district court's determination of the facts and law, and denied the certificate application without a decision on the merits pursuant to the two prong test addressed in Slack v McDaniel, 529 US 473, 120 S Ct 1595, 1604, 146 L Ed 2d 542 (2000). Appendix "2-N."

126). I filed a motion to strike that order and request hearing by a three-judge court because a one-judge court is a violation of FRAP 27(c); Hohn v U.S., 524 US 236, 118 S Ct 1969 141 L Ed 2d 242 (1998); Salve v Regina College v Russell. 499 US 225, 231-232, 111 S Ct 1217, 113 L Ed 2d 190 (1991), and can not decide a substantive and dispositive motion.

127). March 13, 2001, the COA renamed the motion to "motion for rehearing", and denied it, Appendix "2-O," contrary to Henderson v US, 264 F3d 709 (7th Cir. 2001), where I was not advised that the motion may be deemed a motion for rehearing and given a chance to withdraw it.

## UNITED STATES SUPREME COURT

128). I filed certiorari. Washington v Elo, no 00-10792. October 1, 2001, certiorari denied without review on the merits. 122 S Ct 181.

129). I filed for rehearing. Rehearing denied without review on the merits. 122 S Ct 1461.

## CONCLUSION

As the State Supreme Court stated in White v Sadler, 350 Mich 511, 525 (1957): "Although we hold that the plaintiff should not be punished or their judgment lost to them because of any real or alleged neglect on the part of defendant's attorney, this is not to condone or make light of the charge of neglect as it still exists in this case. What are we to tell defendant beyond that he has lost his case? Must we merely express our sympathy and regrets as we turn him away? We think not.

It is not good for the legal profession to have litigants proclaiming that

-19-

lawyers have neglected their cases. And it most certainly is not good for the litigant if their claims should happen to be true--and worse yet when nobody turns a hand. Whether a given claim of neglect by an attorney is groundless or not, it should never be ignored, whatever may properly happen to the main case. There is a responsibility resting squarely on our courts to investigate such charges as and when they are made...

As the court stated in Ex Parte Bain, 121 US 1, 7 S Ct 781, 30 L Ed 849 (1887): Upon principles which may be considered to be well settled in the United States Supreme Court, it can have no right to issue the writ as a means of reviewing the judgment of the State simply upon grounds of error in its proceedings: but if it shall appear [as it is in this case] that the State had no jurisdiction to render the judgment which it gave, and under which the Petitioner is held a prisoner, it is within the power and it is the duty of the United States Supreme Court to ORDER MY DISCHARGE. See also, Fay v Noia, 372 US 391, 400-402 83 S Ct 822, 9 L Ed 2d 837 (1963).

## RELIEF REQUESTED

I ask that the conclusion be considered as I seek declaratory judgment and injunctive relief to the claims herein.

ELLEN B. WOOD, Notary Public
State of Michigan
County of Ionia
My Commission Expires Oct. 14, 2010
Acting in the County of ____

Respectfully requested,

*Ronald Washington*

Ronald Washington, 213524
In Pro Per
Riverside Correction Fac.
777 W. Riverside Dr.
Ionia, Michigan 48846

Dated: April 11, 2005